IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WAYNE LAVERNE ROSE,

                Petitioner,

        vs.

FRED FOULK, Warden, High Desert State Prison,[1]

                Respondent.

No. 2:12-cv-03028-JKS

MEMORANDUM DECISION

Wayne Laverne Rose, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Rose is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at High Desert State Prison. Respondent has answered. Rose has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

In resolving his claims on direct appeal, the California Court of Appeal recounted the underlying facts of this case as follows:

> Forty-eight-year-old Joy D. lived alone in her Stockton apartment and worked in the mailroom and another department of a school. According to her supervisor, Joy was a "special needs" person. A police officer who interviewed Joy described her as "[v]ery simple, somewhat slow. Child like, I guess."
>
> In the early morning of December 27, 2006, Joy was awakened by banging on her front door. She went to the living room to investigate and heard a man talking through the front door. The man said there had been a break-in at the apartments, he worked for the apartment owner, and he had to check all of the apartments to make sure everything was okay.

---

[1]     Fred Foulk, Warden, High Desert State Prison, is substituted for R. E. Barnes, former Warden, High Desert State Prison. FED. R. CIV. P. 25(d).

Joy opened the door slightly and said everything was okay. The man reiterated his claim and told Joy he had to come into her apartment. The man, whom Joy identified at trial as [Rose], entered the apartment even though Joy told him to come back in the daytime.

Joy then told [Rose] to get out and tried to push him back. [Rose] grabbed Joy by the right hand and took her to the bedroom. [Rose] pushed Joy onto the bed and said, "I want to just touch your breasts for a few moments before I leave."

[Rose] touched Joy's breasts and removed her clothes, overpowering her efforts to fight back. Next, [Rose] licked her breasts and put his penis in her mouth. When Joy began gagging, [Rose] got angry, told her to "shut up," and moved his penis to her vagina. [Rose] put his penis partially in Joy's vagina while she was on her back. He then put Joy on top of him, and repeated the act. [Rose] also placed Joy on all fours and had intercourse with her again. He also put his fingers in Joy's vagina. [Rose] did not dress and leave until the sun was coming out.

Joy had never had sex before. She was nervous and upset. Joy did not tell her neighbors because she did not want to scare them, did not call the police because she did not have change to use a pay phone, and did not tell her parents because she wanted to stop thinking about it.

After the attack, Joy started placing a garbage can in front of her apartment door so she could hear any intruders. On the evening of January 8, 2007, Joy was awakened by noises from outside the apartment. She went into the bathroom "frightened, but quietly," locked the door, and placed her body against it.

Joy heard noises coming from the area by her apartment's front window. She heard walking, then saw, through the space under the bathroom door, the bedroom light turn on. Her bathroom door was opened, and Joy saw [Rose], who grabbed Joy and took her to the bedroom.

As before, [Rose] disrobed Joy over her protests. [Rose] put his penis in Joy's mouth, had her pull on his penis with her hand, put his finger in her vagina, and penetrated her with his penis while she was on her back, her stomach, and all fours, and with her on top of [Rose]. [Rose] held her down so she could not move, and blocked the door when he let her go to the bathroom.

[Rose] pulled Joy into the living room, where he made her sit on his lap while he watched "Girls Gone Wild" on the television. He had Joy touch his penis; he placed his penis in her mouth, and touched her vagina and breasts; and he penetrated her vagina with his penis. He then forced Joy back to bed, put his fingers in her vagina, and had intercourse with her again.

[Rose] went to sleep with his arm across Joy. At some point he opened her refrigerator and commented she did not have very healthy food. He left in the morning.

Joy bathed and went to work, where she told her coworker and law enforcement what had happened. She had vaginal soreness and a black-and-blue mark. A sexual assault examination discovered no sperm. There were two small abrasions in the upper exterior area of her vagina, which were consistent with attempted penetration by a penis.

The screens over the front windows of Joy's apartment were removed, and her front window was cracked; neither the screens nor the window was damaged when she

went to bed before the second assault.  [Rose's] fingerprints and a palm print were found in six places, including the windows, the exterior sides of the windows, the window frame or screen frames, and the freezer door.  [Rose's] DNA profile matched DNA from a semen stain on the comforter of Joy's bed.  The possibility of a random match was one in 2.6 sextillion for African-Americans, one in 3.8 quintillion for Caucasians, and one in 21 quintillion for Hispanics.

[Rose] testified on his own behalf.  In December 2006 he was homeless and living with his fiancée.  In the summer of 2006 he visited friends who lived in Joy's apartment complex.  He met Joy at this time and saw her on other visits.  Prior to December 2006 they spoke "quite a few times," and [Rose] had gone into her apartment five or six times to talk.  Joy voluntarily performed oral sex on him during one visit.  [Rose] denied being inside her apartment complex in December 2006 or forcing his way into her apartment.

[Rose] admitted falsely telling a police officer that he was in custody in December 2006 and thus could not have committed the December 27 assault.  He admitted to lying when telling the officer he was in Joy's apartment only once.  [Rose] also lied when he told the officer he never had sexual contact with Joy.

[Rose] said he might have tried to replace Joy's screens two or three times.  The comforter on Joy's bed was always on her when she was in her living room; [Rose] could not explain how his semen got on it.

*People v. Rose*, No. C063559, 2011 WL 2436210, at *1-3 (Cal. Ct. App. June 17, 2011).

Following a jury trial, Rose was convicted of three counts of forcible sexual penetration with a foreign object, two counts of forcible rape, three counts of forcible oral copulation, two counts of burglary, and a single count of attempted rape, along with one-strike enhancements for committing the sex offenses during the commission of a residential burglary.  *Id*. at *1.  He was sentenced to 127 years to life in state prison.  *Id*.

Rose appealed through counsel, arguing that: 1) stationing a support person next to the victim while she was testifying violated his Sixth Amendment right to confrontation; 2) it was error to instruct the jury with CALCRIM No. 362; 3) CALCRIM No. 1190, given by the trial court, is unconstitutional; and 4) there was insufficient evidence to support several of the one-strike enhancements and one of his burglary convictions.  *Id*.  On June 17, 2011, the Court of Appeal affirmed Rose's judgment of conviction in a reasoned opinion.  *Id*. at *8.

-3-

Rose filed a counseled petition for review, arguing that: 1) the presence of the support person on the stand without a finding of necessity violated his right to due process and his right to confrontation; 2) CALCRIM No. 1190 is unconstitutional; and 3) the evidence was insufficient to support the burglary and one-strike findings.  On August 24, 2011, the California Supreme Court summarily denied review.

Rose then filed a *pro se* petition for writ of habeas corpus with the superior court, in which he argued that: 1) his trial counsel was ineffective for failing to call an unidentified alibi witness who would testify that he was innocent; 2) trial counsel was ineffective for failing to present evidence that there was no bruising on the victim after the assault, no DNA found in the victim and no evidence that the victim's home was broken into; 3) trial counsel was ineffective for failing to investigate his claims that he knew the victim prior to the incident in question and that his fingerprints were on the window because he had visited her at her home; 4) trial counsel was ineffective for failing to properly cross-examine the complaining witness about why there was no evidence of forced entry and why she did not cry for help; 5) trial counsel was ineffective for failing to cross-examine the victim and other witnesses for the prosecution about inconsistencies in their testimony; and 6) the prosecutor committed misconduct by "coaching" the victim prior to trial.  On June 25, 2011, the superior court denied relief in a reasoned opinion.

Rose subsequently filed a *pro se* petition for writ of habeas corpus with the Court of Appeal, in which he argued that: 1) trial counsel was ineffective for failing to call an alibi witness; 2) trial counsel was ineffective for refusing to present a declaration from the alibi witness who would state that Rose and his fiancée "were together in their car after a night of visiting with friends"; 3) trial counsel was ineffective for failing to move for a private

investigator to seek out possible eyewitnesses to Rose's physical location on the evenings in question; 4) trial counsel failed to investigate witnesses who would testify as to the victim's habits and behaviors and failed to call twelve alibi witnesses; 5) the prosecutor committed misconduct in failing to produce exculpatory evidence; and 6) there was insufficient evidence that he committed any sexual assault.  On August 9, 2012, the Court of Appeal summarily denied Rose habeas relief.

Finally, Rose filed a *pro se* petition for writ of habeas corpus with the California Supreme Court, raising the identical arguments he unsuccessfully raised in his petition for habeas relief to the Court of Appeal.  The California Supreme Court summarily denied review on November 20, 2012.  Rose filed his *pro se* Petition for Writ of Habeas corpus with this Court on December 11, 2012.

## II. GROUNDS RAISED

In his Petition before this Court, Rose argues that: 1) allowing a support person to sit next to Joy on the stand violated his rights to confrontation and due process; 2) the trial court violated his right to due process by instructing the jury that it could convict him on Joy's testimony alone; 3) the jury instructions were biased; 4) his trial counsel was ineffective for failing to call his fiancée to testify as an alibi witness and for failing present a declaration from his fiancée in support of his alibi; 5) trial counsel was ineffective for failing to investigate 12 additional alibi witnesses or the tenants of the victim's apartment complex who could testify that he did odd jobs at the complex but was not there on the evenings in question; 6) the prosecutor committed misconduct in failing to turn over exculpatory evidence; and 7) there was insufficient evidence to support the rape charges because there was no evidence that he vaginally penetrated the victim.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is "contrary" to federal law "if the state court applies a rule

that contradicts the governing law set forth" in controlling Supreme Court authority or "if the

state court confronts a set of facts that are materially indistinguishable from a decision" of the

Supreme Court but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362,

406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1)

"refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision," *Williams*, 529 U.S. at 412, and not circuit precedent, *see Renico v.

Lett*, 559 U.S. 766, 778-79 (2010).  The holding must also be intended to be binding upon the

states; that is, the decision must be based upon constitutional grounds and not on the supervisory

power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Thus,

where holdings of the Supreme Court regarding the issue presented on habeas review are

lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established

Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned

decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

(citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision.  *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief."  *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

Rose has not replied to Respondent's answer.  The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."  28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952).  Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

IV. DISCUSSION

A. Presence of a support person during the victim's testimony

Rose first argues that the trial court violated his right to confrontation and right to due process by allowing a support person to sit next to Joy on the stand. Rose claims that the support person coached Joy and "[told] her what to say to each of the prosecution[']s questions." Rose raised this claim on direct appeal, and the Court of Appeal denied him relief:

> Citing [California Penal Code] section 868.5, subdivision (a), the People moved in limine to allow a support person, Joy's victim advocate, to accompany Joy during her testimony. The motion was granted over [Rose's] objection.
>
> [Rose] contends the court's ruling violates due process and his Sixth Amendment right to confrontation. We disagree.
>
> Section 868.5 authorizes prosecuting witnesses in cases involving particular offenses, including sections 261, 288a, or 289, to have up to two support people during their testimony. (§ 868.5, subd. (a).) If the support person is also testifying, the prosecution must present evidence that the person's attendance is both desired by and helpful to the prosecuting witness. (§ 868.5, subd. (b).) After making such a showing, the court must grant the request unless information presented by the defendant or noticed by the court establishes that the person's attendance "pose[s] a substantial risk of influencing or affecting the content of that testimony." (§ 868.5, subd. (b).) If the support person does not testify, there is no requirement of showing that the support person is desired or helpful to the prosecuting witness. (§ 868.5, subds.(a) & (b); *People v. Johns* (1997) 56 Cal. App. 4th 550, 554-555, 65 Cal. Rptr. 2d 434 (*Johns*); *People v. Adams* (1993) 19 Cal. App. 4th 412, 434, 23 Cal. Rptr .2d 512 (*Adams*).)
>
> [Rose] argues that stationing a support person while the complaining witness testifies on the stand violates due process by endorsing the victim witness and thereby undermining the presumption of innocence. As he admits, California courts have consistently rejected this argument. (*People v. Ybarra* (2008) 166 Cal. App. 4th 1069, 1076-1079, 83 Cal. Rptr. 3d 340; *Adams, supra,* 19 Cal. App. 4th at pp. 435-436, 23 Cal. Rptr. 2d 512; *People v. Patten* (1992) 9 Cal. App. 4th 1718, 1725-1727, 12 Cal. Rptr. 2d 284 (*Patten*).) We agree with those decisions; allowing a support person to accompany the complaining witness to the stand as specified in section 868.5 does not deprive [Rose] of his due process right to a fair trial.
>
> As to [Rose's] Sixth Amendment claim, we agree with the Attorney General that the claim is forfeited because [he] failed to raise it before the trial court.
>
> Following his objection to the support person, counsel informed the court that the defense was that Joy was not a victim. He claimed: "[I]n light of the nature of the charges, in light of the perceived victim-hood of the—of Miss [D.], I'm concerned that a

person sitting beside her will just support, bolster that continuing victim-hood—appeared victim-hood of—of Miss [D.]"

[Rose's] objection on appeal is based on *Adams,* which found that the presence of a witness support person at the stand "has an effect on jury observation of demeanor," an aspect of the Sixth Amendment right to confrontation.  (*Adams, supra,* 19 Cal. App. 4th at pp. 441, 23 Cal. Rptr. 2d 512.)  Relying on *Coy v. Iowa* (1988) 487 U.S. 1012 [101 L. Ed. 2d 857] (*Coy*) and *Maryland v. Craig* (1990) 497 U.S. 836 [111 L. Ed. 2d 666], the *Adams* court found this element of the confrontation clause was violated by the presence of the support person, and a trial court is required to make a "showing of need" before a support person can accompany the victim to the witness stand.  (*Adams,* at pp. 443-444, 23 Cal. Rptr. 2d 512.)

[Rose's] trial objection did not mention the Sixth Amendment, and did not assert that the support person improperly affected the jury's ability to observe Joy's demeanor.  Rather, defense counsel argued the support person's presence next to Joy effectively endorsed her testimony.  This asserts an alleged violation of the due process right to the presumption of innocence, not the confrontation clause violation addressed in *Adams.*

[Rose's] claim that a Sixth Amendment objection would have been futile is without merit.  Had the trial court been presented with a Sixth Amendment objection based on *Adams* or even *Coy,* it could have made a finding on the showing of need required by those decisions.  Since the support person did not testify, a necessity finding was not required under section 868.5.  [Rose's] claim is precisely the sort of contention that should be subject to forfeiture—one that could be rectified if first brought to the trial court's attention.  [Rose's] failure to object on Sixth Amendment grounds forfeits his contention on appeal.  (*People v. Lord* (1994) 30 Cal. App. 4th 1718, 1722, 36 Cal. Rptr. 2d 453 (*Lord*).)

Forfeiture aside, we would also reject [Rose's] contention on the merits.  Other appellate courts addressing this issue have not required a finding of necessity under section 868.5.  The Court of Appeal for the Fifth Appellate District held that allowing a support person to be in the gallery in "the absence of a requirement of a case-specific showing of necessity does not . . . make this statute unconstitutional per se."  (*Patten, supra,* 9 Cal. App. 4th at p. 1727, 12 Cal. Rptr. 2d 284.)  The *Patten* court noted there were procedures available in utilizing support persons that would not infringe on a defendant's confrontation rights.  (*Ibid.*)  The Court of Appeal for the Fourth Appellate District found that the presence of a support person at the witness stand impacted demeanor evidence but "not significantly, at that."  (*Johns, supra,* 56 Cal. App. 4th at p. 554, 65 Cal. Rptr.2d 434.)  The First District Court of Appeal held that the requirement of a showing of necessity was "debatable."  (*Lord, supra,* 30 Cal. App. 4th at p. 1721, 36 Cal. Rptr. 2d 453.)  The *Lord* court noted that the required showing is set forth in the statute, which requires that "the support person's attendance 'is both desired by the prosecuting witness for support and will be helpful to the prosecuting witness.'" (*Id.* at p. 1722, 36 Cal. Rptr. 2d 453, quoting § 868.5, subd.(b).)

Just before Joy testified, the trial court instructed the jury as follows: "The presence of a second person on the witness stand should not in any way cause you to conclude they endorse the witness' testimony.  [¶]  Furthermore, their presence should

not be considered by you in any way during the trial, nor during the first trial of deliberations in this matter.  In other words, they'll just be, we call them witness advocate, sitting behind Joy for her testimony."

     The trial court's instruction told the jury to focus its attention on Joy and not to consider the support person's presence. The placement of the support person behind Joy diminishes any impact she may have had on the jury's consideration of Joy's demeanor. In *Adams,* the support person sat either "next to or behind" the victim when she testified. (*Adams, supra,* 19 Cal. App. 4th at p. 434, 23 Cal. Rptr. 2d 512.)  There is no indication that the trial court in *Adams* instructed the jury on the support person, although the prosecutor briefly commented on it.  (*Id.* at pp. 434-435, 23 Cal. Rptr. 2d 512.)  Finally, in *Adams* the support person, the victim's father, testified at trial and was alleged to have physically abused her.  (*Id.* at pp. 424, 435, 23 Cal. Rptr. 2d 512.)

     *Adams* is inapposite.  The trial court's instructions neutralized any possible prejudice from the support person's presence.

*Rose*, 2011 WL 2436210, at *3-5.

As an initial matter, because the state appellate court found Rose's confrontation claim forfeited under California's contemporaneous objection rule, the claim is procedurally defaulted from federal habeas review.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (a federal court will not review a claim if the state court's rejection of the claim rests on a state law ground that is independent of the federal question and adequate to support the judgment).  The Ninth Circuit has repeatedly recognized and applied the California contemporaneous objection rule in affirming denial of a federal habeas petition on grounds of procedural default where there was a complete failure to object at trial.  *See, e.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).  Because the state appellate court held that the claim was thereby forfeited under California's contemporaneous objection rule, Rose's confrontation clause claim is procedurally defaulted.

Nevertheless, his claim must also fail on the merits.  The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. CONST. amend. VI.  This right,

extended to the States by the Fourteenth Amendment, includes the right to cross-examine

witnesses. *Pointer v. Texas*, 380 U.S. 400, 403 (1965).  It guarantees the defendant a face-to-

face meeting with witnesses appearing before the trier of fact.  *See Coy v. Iowa*, 487 U.S. 1012,

1020-22 (1988) (placement of screen between defendant and child sexual assault victims during

testimony against defendant violated Confrontation Clause rights); *Davis v. Alaska*, 415 U.S.

308, 319 (1974) (notwithstanding state police protecting anonymity of juvenile offenders, refusal

to allow defendant to cross-examine key prosecution witness denied defendant constitutional

right to confront witnesses).  This physical confrontation "enhances the accuracy of factfinding

by reducing the risk that a witness will wrongfully implicate an innocent person." *Maryland v.*

*Craig*, 497 U.S. 836, 846 (1990) (citing *Coy*, 487 U.S. at 1019-20 ("It is always more difficult to

tell a lie about a person 'to his face' rather than 'behind his back.' . . . That face-to-face presence

may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may

confound and undo the false accuser, or reveal the child coached by a malevolent adult.").  The

right guaranteed by the Confrontation Clause includes not only a "personal examination," but

also "(1) insures that the witness will give his statements under oath—thus impressing him with

the seriousness of the matter and guarding against the lie by the possibility of a penalty for

perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever

invented for the discovery of truth'; and (3) permits the jury that is to decide the defendant's fate

to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing

his credibility." *Id*. at 845-46 (quoting *California v. Green*, 399 U.S. 149, 158 (1970) (internal

brackets omitted)).

The use of a support person took away none of the confrontive aspects required by *Craig*. The victim testified under oath and in full view of the jury while trial counsel conducted cross-examination, thus enabling the jury to observe her demeanor and evaluate her credibility.  The support person did not sit with the victim, but rather sat some distance behind her.  Rose's contention that the support person "coached" Joy while she was on the stand and "t[old] her what to say" is belied by the record.  The support person said nothing during either direct or cross-examination, and Joy did not consult with the support person at any time during her testimony.  In fact, in a side hearing, the support person testified that she did not discuss the facts of the case with Joy prior to trial to avoid becoming a witness herself.  There is nothing in the record to indicate that the presence of the support person interfered in any way with the victim's testimony.  *See Schrodt v. Pleasant Valley State Prison Warden*, No. C 04-5086, 2006 WL 1867586, at *8 (N.D. Cal. July 5, 2006) (presence of support person next to victim testifying in a sexual assault case did not violate the Confrontation Clause where the victim testified in person under oath and the jury could observe her demeanor).  Moreover, there is no Supreme Court authority to support Rose's claim that the presence of the support person violated his right to confrontation, and therefore the appellate court's conclusion was not contrary to, or an unreasonable application of, federal law.  *Carey*, 549 U.S. at 77 (where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law'") (citation omitted).

Rose's companion claim that the presence of the support person denied him a fair trial by endorsing the victim's testimony or undermining the presumption of innocence is likewise without merit.  Again, the support person sat behind Joy and said nothing during Joy's

testimony.  Moreover, prior to the victim taking the stand, the court instructed the jury that the

victim was afforded a support person in accordance with California law, but that "[t]he presence

of a second person on the witness stand should not in any way cause you to conclude that they

endorse the witness' testimony.  Further, their presence should not be considered by you in any

way during the trial, nor during . . . deliberations in this matter."  That instruction was also

included in the packet of instructions provided to the jury.  This Court must assume in the

absence of evidence to the contrary that the jury followed those instructions.  *Weeks v. Angelone*,

528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost

invariable assumption of the law that jurors follow their instructions").  Rose has presented no

evidence to support his claim that the support person caused the jury to give more weight to

Joy's testimony, and the appellate court's conclusion that there was no deprivation of his right to

a fair trial was not unreasonable.  He therefore cannot prevail on this claim.

B. Instructional errors (claims 2 and 3)

        Rose next raises two instructional error claims.  A challenged instruction violates the

federal constitution if there is a "reasonable likelihood that the jury has applied the challenged

instruction in a way that prevents the consideration of constitutionally relevant evidence."

*Boyde v. California*, 494 U.S. 370, 380 (1990).  The question is whether the instruction, when

read in the context of the jury charges as a whole, is sufficiently erroneous to violate the

Fourteenth Amendment.  *Francis v. Franklin*, 471 U.S. 307, 309 (1985).  As already discussed,

this Court must also assume in the absence of evidence to the contrary that the jury followed

those instructions.  *Weeks*, 528 U.S. at 234; *Richardson*, 481 U.S. at 206; *see Francis*, 471 U.S.

at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id.* at 73 (citation omitted). Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process." *Id.* at 156-57; *Estelle*, 502 U.S. at 72.

1.    CALCRIM No. 1190 (claim 2)

Rose argues that the court instructed the jury "in such a way that it . . . gave the impression that only the victim[']s account of the crime was needed to convict and find [him] guilty, voiding the need to believe guilt beyond a reasonable doubt." ECF 1 at 4. Rose raised this claim on direct appeal, and the Court of Appeal denied him relief:

> The trial court instructed the jury with CALCRIM No. 1190, which states that "[c]onviction of a sexual assault crime may be based on the testimony of a complaining witness alone."
> [Rose] contends this instruction violates due process by singling out a single witness's testimony for consideration, and by diminishing the People's burden of proof.
> As [Rose] admits, this contention was rejected by the California Supreme Court in the context of the predecessor to CALCRIM No. 1190, the substantially identical CALJIC No. 10.60. Thus, we reject it as well.

-14-

Rose, 2011 WL 2436210, at *7 (citations and footnote omitted).

Rose's claim is without merit.  Federal law is consistent with California law in that "[t]he testimony of one witness . . . is sufficient to uphold a conviction."  *United States v. Larios*, 640 F.2d 938, 940 (9th Cir. 1981); *see also Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004) (per curiam); *United States v. Smith*, 563 F.2d 1361, 1363 (9th Cir. 1977).  Moreover, the jury was properly instructed on the burden of proof, the presumption of innocence, and factors for evaluating witness testimony.  The court specifically instructed the jury with factors it should consider in evaluating Joy's eyewitness identification of Rose as the perpetrator.  The instructions comported with federal law in instructing that although the testimony of one witness alone could support a conviction, that testimony must be credible and believable and must prove all elements of the crime beyond a reasonable doubt.  The state court's conclusion that the instruction did not violate due process was not unreasonable or contrary to federal law, and Rose therefore cannot prevail on this claim.

     2.     Biased jury instructions

Rose next argues as follows:

> His Honor only instructed the jury on how "he wanted the jury to convict" not on how they must decide the question of guilt or innocen[c]e.  The trier of fact totally eliminated all jury instructions that dealt with other possible lesser crimes or even how to find [him] innocent or not guilty.

Respondent correctly contends that this claim is unexhausted.  This Court may not consider claims that have not been fairly presented to the state courts.  28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).  To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented.  *See*

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To have properly exhausted his state court remedies, Nickerson must have presented both the legal arguments and the factual basis to the highest state court.  *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003).  Rose failed to raise this claim on direct appeal or on collateral review in the state courts, and accordingly it is unexhausted.

Unexhausted claims must be dismissed.  *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005).  However, this Court need not rely on this basis as it may deny the petition on the merits notwithstanding the lack of exhaustion of state court remedies.  28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Accordingly, this Court declines to dismiss the unexhausted claim solely on exhaustion grounds and will instead reach the merits of the claim as discussed below.

Rose's claim is without merit.  As already mentioned, the trial court instructed the jury that it must presume that Rose was innocent, requiring the People to prove him guilty beyond a reasonable doubt, and that Rose had the right to elect not to testify and did not have to prove he was elsewhere at the time of the crimes.  The court further instructed the jury on factors to consider in evaluating a witness's testimony for believability and credibility, and the elements of the crimes Rose was charged with.  These instructions are standard instructions, and Rose has not pointed to any specific instructions which he finds objectionable and which demonstrate a bias on the part of the trial court.

Additionally, Rose's claim that the instructions were erroneous because they did not include any lesser included offenses must ultimately fail because the United States Supreme

Court has expressly declined to decide whether due process requires lesser included instructions to be given in non-capital cases, *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980), and the Ninth Circuit has declined to extend the holding of *Beck*, which requires lesser included offense instructions supported by the evidence in capital cases, to non-capital cases, *see Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000) (per curiam) (the "failure of a state court to instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." (quoting *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984)); *see also Blakely v. Terhune*, 126 F. App'x 396, 398 (9th Cir. 2005) ("[T]here is no clearly established federal law which holds that a petitioner is entitled to a lesser included offense instruction . . . . To the contrary, the U.S. Supreme Court has held that instructions upon lesser included offenses were *not* compelled by Supreme Court precedent."). Although a criminal defendant may suffer a due process violation if the court's failure to give a requested instruction prevents a defendant from presenting his theory of the case, *Bashor*, 730 F.2d at 1240, Rose makes no such argument here.  Given the absence of Supreme Court authority on this issue, this Court cannot say that the California Supreme Court's summary rejection of this claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Carey*, 549 U.S. at 77.

Moreover, the trial court determined that although the evidence supported giving an instruction on the lesser included offense of attempted rape, it did not support giving instructions on any other potential lesser included offenses, such as sexual battery.  This Court must be

particularly deferential to such findings of fact, and Rose has not provided a basis for the Court

to do otherwise.  *Sumner v. Mata*, 455 U.S. 591, 597-98 (1982) (state courts' underlying factual

findings are subject to a presumption of correctness); *Ponce v. Cupp*, 735 F.2d 333, 336 (9th Cir.

1984).  Rose therefore cannot prevail on this claim.

C. Ineffective assistance of counsel (claims 4 and 5)

 Rose next argues that trial counsel was ineffective for failing to present his fiancée, a

declaration from his fiancée, or any of 12 other unidentified other witnesses who would testify

that he was sleeping in his car with his fiancée on the evenings in question.  Rose further argues

that trial counsel was ineffective for failing to question tenants of Joy's apartment complex who

would confirm that he was not in the area at the time of the alleged crimes, but that he had

regularly been at the complex on other occasions to perform odd jobs and had been seen

attempting to reattach Joy's window screen.

 Rose raised this claim in his petition for habeas relief to the superior court, and the

superior court denied relief on the ground that Rose failed to "provide any specifics regarding

this matter" or "submit[] any documentation in support of his claim."

 To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a

defendant must show both that his counsel's performance was deficient and that the deficient

performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one

in which "counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a

reasonable probability that the outcome might have been different as a result of a legal error, the

defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376,

1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Rose must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

It is through this highly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d) standard.  *See Knowles*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

Rose's claim that counsel failed to call his fiancée or any of 12 other alleged alibi witnesses, or present a declaration from his fiancée stating that he was with her on the evenings in question, must fail.  First, the ultimate decision not to call witnesses to testify is well within counsel's "full authority to manage the conduct of the [trial]."  *Taylor v. Illinois*, 484 U.S. 400,

418 (1988) ("Putting to one side the exceptional cases in which counsel is ineffective, the client

must accept the consequences of the lawyer's decision . . . to decide not to put certain witnesses

on the stand . . . .").  Second, other than his fiancée, Rose has not identified any of the alibi

witnesses he faults counsel for not calling.  There is no evidence that these additional 12

individuals actually exist, and Rose and has failed to provide any evidence, other than his self-

serving statements, that they would have provided testimony helpful to his defense.  *See Dows v.*

*Wood*, 211 F.3d 480, 486-87 (9th Cir. 2000) (rejecting petitioner's claim that counsel was

ineffective for failing to call alibi witnesses where there was no evidence that the witness existed

and the petitioner provided no evidence that the witness would have provided helpful testimony

for the defense).  Rose has similarly failed to support his contention that counsel failed to

interview witnesses at Joy's apartment building who would testify that although he had been to

the complex several times to perform odd jobs, he was not there on the evenings Joy claimed he

sexually assaulted her.  It is not clear who these witnesses are, and if indeed they would have

provided Rose with an alibi.

In any event, Rose had somewhat implausibly testified that he had been to Joy's

apartment several times, and that although they did not know each other's names and she was a

48 year-old virgin, she initiated oral sexual contact with him in the summer of 2006 and despite

enjoying it, he never returned.  He also contradictorily admitted that he told police three times

that he never had sexual contact with Joy.  He further testified that he was sleeping in his car

with his fiancée in December 2006, but on cross-examination admitted that he originally told the

police that he could not have committed the incident in December of 2006 because he was in

custody at the time, and at another point told the police that he was staying with his mother at her house in December of 2006.[2]

In closing argument, counsel did not present an alibi defense.  Defense counsel conceded that Rose's testimony was "evasive," and that he "[d]idn't handle himself very well" on the stand, even going as far to say, "I'm not a fan of Mr. Rose."  Counsel instead focused on the fact that Rose did not admit to any of the conduct he was charged with, and extensively called Joy's credibility into account, noting in particular the inconsistencies between her testimony and her reports to the police with respect to whether Rose had in fact penetrated her.  Defense counsel also highlighted the fact that Joy had a "narrowing of her vagina," suggesting that if Joy were telling the truth about being raped, she would have sustained more physical injuries to her vaginal area.  In one instance, defense counsel called Joy "a crazy" for testifying that Rose had extracted her from the bathroom because there was no sign of forced entry despite her claim that she had locked the door and barricaded herself against it.  The thrust of defense counsel's argument was that there was "[n]o evidence of penetration.  No evidence that she was yanked out of the bathroom.  No evidence of her alleged . . . intellectual deficiencies.  No evidence of an attack, unwilling attack."

It appears from closing argument that counsel deliberately decided to draw attention away from Rose's testimony, which included conflicting accounts of his whereabouts on the evenings in question and a somewhat questionable account of the nature of his relationship with

---

[2]     In his Petition before this Court, Rose presents yet another version of events.  He claims that he and Joy had engaged in a consensual sexual relationship, and that on December 29, 2006, he went to her apartment to break things off.  He claims that the "now upset victim offered oral sex . . . as a parting gift, [he] accepted, spilled semen on the comforter but thought nothing of it.  'Hell hath no fury like a woman that has been scorned.'"

Joy, and to instead argue that Joy's testimony was incredible and unbelievable and that the evidence did not support her allegations.  Reasonable tactical decisions, including decisions with regard to the presentation of the case, are "virtually unchallengeable."  *Strickland*, 466 U.S. at 690-91.  Rose has failed to overcome the presumption that counsel's failure to present alibi evidence amounted to a reasonable trial strategy which this court may not second-guess.  He therefore cannot prevail on this claim.

D. Prosecutorial misconduct

Rose next argues that the District Attorney "conduct[ed] an investigation into the life and behavior of the alleged victim and interviewed potential defense witnesses to the innocen[c]e of [Rose] and failed to turn over the recorded statements and identification of said witnesses."  The superior court denied relief on habeas review, concluding that Rose had failed to support his claim with any specifics or documentation.

In *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. 83, 87 (1962).  There are three elements of a true *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).  Exculpatory evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id*. at 280 (quotation marks omitted).

Rose's claim must fail, however, because Rose has failed to demonstrate that the exculpatory evidence exists and that it would have been helpful to his defense.[3]  His *Brady* claim is based on speculation and accordingly rejected by this Court.  *See id.* at 286 ("Mere speculation that some exculpatory may have been withheld is unlikely to establish good cause for a discovery request on collateral review."); *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) ("mere speculation about materials in the government's files does not require . . . this court under *Brady* to make the materials available for the appellant's inspection" (citation and internal brackets omitted); *Jensen v. Hernandez*, 864 F. Supp. 2d 869, 911 (E.D. Cal. 2012) (denying petitioner's *Brady* claim where he failed to demonstrate that the medical records allegedly withheld by the prosecution actually existed, that the records were destroyed by police, and that the records would have been helpful to his defense); *see also United States v. Finkel*, 165 F. App'x 531, 533 (9th Cir. 2006) (rejecting *Brady* claim where petitioner failed to show that the evidence existed).  Rose therefore cannot prevail on this claim.

E. Insufficiency of the evidence

Rose next argues that the evidence was insufficient to support his conviction for forcible rape because there was no medical evidence of penetration.  He raised this claim in his petitions

---

[3]      The only specific evidence Rose refers to is Dr. DeMartinis's sexual assault report.  He claims the prosecution withheld it from the jury and failed to immediately share the results with defense counsel.  However, Dr. DeMartinis repeatedly referred back to his report to refresh his recollection during his testimony.  Defense counsel also cross-examined him about the references in his report to vaginal stenosis, as well as a phone call defense counsel made to the doctor about that condition.  And, as already discussed, defense counsel argued in summation that the medical evidence did not support Joy's claim that she was raped.  There record does not support Rose's claim that evidence regarding Joy's sexual assault examination was withheld from the defense.

for habeas relief to the Court of Appeal and California Supreme Court; both courts summarily denied relief.

As articulated by the Supreme Court in *Jackson*, the federal constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the California court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the

state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be

accepted by federal courts as defining state law . . . .").  "Federal courts hold no supervisory

authority over state judicial proceedings and may intervene only to correct wrongs of

constitutional dimension."  *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith*

*v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).  It is through this lens

that this Court must view an insufficiency of the evidence claim.

Under California law, "[r]ape is an act of sexual intercourse accomplished with a person

not the spouse of the perpetrator . . . [w]here it is accomplished against a person's will by means

of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person

or another."  CAL. PENAL CODE § 261(a)(2).  Here, Joy testified that Rose put his penis inside her

vagina, that she could feel the pressure, and that it hurt.  Dr. Douglas DeMartinis testified that he

completed a sexual assault kit on Joy on January 8, 2007, and that during that examination, Joy

complained of vaginal soreness as well as soreness to her back and neck.  He also observed two

small abrasions to the outside of her vagina which were consistent with someone trying to

penetrate her.

Rose claims that the "medical sexual assault examination proved beyond a reasonable

doubt that it was physically impossible for the victim to have suffered any vaginal penetration in

the slightest way due to . . . vaginal stenosis."  Rose's claim is a mischaracterization of Dr.

DeMartinis's testimony.  Dr. DeMartinis testified that although he was able to insert a speculum

the girth of his thumb into Joy's vagina, he was not able to open it, either because Joy was tense

or because she had "vaginal stenosis."  When asked on cross-examination if the "limitation as it

relates to Joy's vagina" would have lead to more trauma than he had in fact observed if she had

-25-

actually been raped, the doctor stated that "I don't know if that's fair or not.  It's conceivable that that could happen, but . . . . there's so many variables."  His statements about the limitation on his pelvic exam were consistent with Joy's testimony that Rose had difficulty penetrating her fully, and that Rose repeatedly complained that she was "too tight."  Nevertheless, Joy testified that Rose was able to penetrate her somewhat, and in California, "[a]ny sexual penetration, however slight, is sufficient to complete the crime [of rape]."  CAL. PENAL CODE § 263.  This is because "[t]he essential guilt of rape consists in the outrage to the person and feelings of the victim of the rape."  *Id.*

Rose's argument that the medical evidence did not support his rape convictions is nothing more than an attack on the testimony of both Joy and Dr. DeMartinis.  However, this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  *Schlup v. Delo*, 513 U.S 298, 330 (1995); *Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004).  Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain a conviction.  *Schlup*, 513 U.S. at 330.  The United States Supreme Court has recently even further limited a federal court's scope of review under *Jackson*, holding that "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam).  *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."  *Id.* at 3-4.  Under *Cavazos*, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court

disagrees with the state court.  The federal court instead may do so only if the state court

decision was 'objectively unreasonable.'" *Id.* at 4 (*quoting Renico*, 559 U.S. at 773 (2010).

In sum, Joy testified that Rose did in fact penetrate her, however slight, and Dr.

DeMartinis testified that she sustained injuries consistent with sexual assault.  Although it might

have been possible to draw a different inference from the evidence, this Court is required to

resolve that conflict in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  Viewing the

evidence in the light most favorable to the verdict, the record does not compel the conclusion

that no rational trier of fact could have found proof that Rose raped Joy, especially considering

the deference owed under *Jackson*, *Cavazos*, and the AEDPA.  The state court's rejection of

Rose's legal sufficiency claim is therefore not "objectively unreasonable" under *Cavazos*.  132

S. Ct. at 4.  Accordingly, Rose is not entitled to habeas relief on his claim that the evidence

introduced at trial was insufficient to support the rape convictions.

## V. CONCLUSION AND ORDER

Rose is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain

a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: September 15, 2014.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge